UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTELLISOFT, Ltd,

         Plaintiff,

    v.

ACER AMERICA CORPORATION, et al.,

         Defendants.

Case No. 17-cv-06272-PJH

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

Re: Dkt. No. 21

Plaintiff Intellisoft, Ltd's ("Intellisoft") motion to remand came on for hearing before this court on January 10, 2018. Plaintiff appeared through its counsel, Andrew Spielberger. Defendants and counterclaimants Acer America Corporation and Acer Inc. (together, "Acer") appeared through their counsel, Matthew Ball. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES plaintiff's motion to remand, for the following reasons.

## BACKGROUND

### A.    Procedural Background

On March 21, 2014, Bruce Bierman and Intellisoft filed this action in the Superior Court of the State of California for the County of Marin. On October 22, 2014, the Marin County Superior Court transferred the case to the County of Santa Clara. In May 2015, Bierman assigned to Intellisoft any and all interest and substantive rights he had to the intellectual property relevant to this case. Dkt. 1-1 ¶ 13. Bierman dismissed himself from the case that same month. On September 25, 2017, Intellisoft filed the operative Fourth

Amended Complaint (the "complaint").

Intellisoft alleges that in the early 1990s Bierman shared with engineers at Acer America Corporation pursuant to a non-disclosure agreement certain purported trade secrets related to computer power management. Intellisoft further alleges that in January 1992, Acer used those ideas without Bierman's knowledge or permission in applying for and later obtaining U.S. Patent No. 5,410,713, "Power Management System for a Computer," ("the '713 Patent"), as well as three later continuations of that patent (collectively, the "'713 Family of Patents" or the "patents").

The alleged trade secrets relate to a "smart computer power supply" that allows computer manufacturers to manage and control power in a computer by implementing a second "smart" standby low power supply coupled to a pushbutton power switch (eliminating the wall-switch type on/off) and a microprocessor and other components to control power to the computer's main switchable power supply. Intellisoft also purportedly developed software that interacted with this mechanism to provide enhanced PC wake up and shutdown process and procedures, and the ability to control other system states. See Dkt. 1-1 ¶ 42.

The operative complaint asserts four causes of action for: (1) misappropriation of trade secrets, (2) intentional misrepresentation and concealment, (3) breach of contract—non-disclosure agreement, and (4) accounting. The parties agree that causes of action 2 and 4 depend on causes of action 1 and 3.

Since its filing in March 2014, the case has been actively litigated, including multiple motions to dismiss and multiple summary judgment motions. Prior to removal, the parties had completed fact discovery and expert discovery was nearing completion. Defendants' removal and the present motion to remand arise directly from expert disclosures and depositions that occurred in September and October 2017—approximately one month before the state court's November 13, 2017 expert discovery deadline expired.

Trial was set to begin in state court on November 28, 2017.

**B.    Expert Discovery Background**

On March 8, 2017, Intellisoft served its expert disclosure.  As relevant here, the disclosure described in general terms what plaintiff's experts would opine upon.  As relevant here, the disclosure stated that Irving Rappaport "may be called to testify on issues pertaining to liability and damages," Bob Zeidman "may be called to testify on issues pertaining to liability and damages," and Brian Napper "may be called to testify on damages."  Ex. 5 at 3-4.

In late September 2017, defendants received Rappaport's and Zeidman's expert reports.  Exs. 7, 9.  On October 11 and 20, 2017, defendants deposed Zeidman and Rappaport, respectively.  On October 27, 2017, three days before this case was removed, defendants received Napper's expert report.  Ex. 14.

Between Rappaport's expert report and deposition, defendants learned for the first time that Rappaport would testify on inventorship, patentability, and validity.  For example, Rappaport's expert report states that "Mr. Bierman should have been named as a co-inventor of the '713 patent . . . [and] arguable that Mr. Bierman was the sole inventor of the '713 patent family for all the reasons presented" in the Rappaport's expert report.  Ex. 7 at 33.  Rappaport also opined that the "trade secret and confidential information described in the '713 Family of Patents, were created by Mr. Biermand on behalf of Intellisoft, Ltd."  Id. at 9.  During his deposition, Rappaport confirmed that it was his opinion that under federal law Bierman should have been named as an inventor and that he intended to testify to that effect at trial.  Ex. 8 at 18:6-19:8.  Rappaport also opined on the '713 Family of Patents validity and patentability under federal law.  Ex. 7 at 8-9.

In Zeidman's report, Ex. 9, supplemental report (filed October 10, 2017), Ex. 11, and deposition, Ex. 13, Zeidman compared the purported trade secrets to the '713 Family of Patents and opined that the patents included plaintiff's trade secrets.  See, e.g., Ex. S; see also generally Exs. 9, 11, 13.  Zeidman's expert reports also attached 28 separate claim charts, each one analyzing whether an industry standard "read on" the '713 Family of Patents or necessarily used plaintiff's trade secrets.  See, e.g., Ex. 10 and 12.  In

performing this analysis, Zeidman construed the scope and meaning of claims within the '713 Family of Patents. See Id. As relevant here, Zeidman concluded that computers using the ACPI[1] industry standard necessarily used the '713 Family of Patents. Ex. 10 at 35, Ex. 11 ¶ 16; Ex. 12 at 2, Ex. 13 at 332:23-333:9. Accordingly, it is Zeidman's opinion that computers using the ACPI industry standard incorporate plaintiff's trade secrets. Ex. 13 at 366:3-6.

Lastly, Napper's expert report states that Intellisoft is entitled to royalty damages based on every Acer ACPI-compliant computer sold since 1997. See, e.g., Ex. 14 ¶¶ 8-10, 20. Napper's calculation expressly relies on Zeidman's and Rappaport's analysis, including Zeidman's conclusion that ACPI compliant computers use the '713 Family of Patents (and, therefore, plaintiff's trade secrets) and Rappaport's inventorship opinion. Ex. 14 ¶¶ 8-10, 19, 20.

## C. Removal Background

On October 30, 2017, in response to these reports and depositions, defendants filed a cross-complaint in state court naming Bierman and plaintiff. That cross-complaint sought a declaratory judgment under the Federal Declaratory Judgment Act and 35 U.S.C. § 256 that Bierman should not be a named inventor on any of the patents in the '713 Family. Ex. 15.[2] However, defendants' cross-complaint did not become operative because under the California Code of Civil Procedure a party must obtain leave of court to file a cross-complaint unless the party has not filed an answer or the court has not yet set a date for trial. Cal. Code of Civ. P. § 428.50. Because defendants had neither moved nor obtained leave of court, the cross-complaint was deemed "lodged." Ex. D.

Also on October 30, 2017, shortly after the cross-complaint was "lodged" with the

---

[1] ACPI is a power management standard developed by a consortium of companies, led by Microsoft and Intel Corporation. Dkt. No. 20, 5 n.1, First Amended Counterclaim. The standard was first released in December 1996 and became the industry-wide power management standard. Id. Acer began designing computers that complied with the ACPI standard after its release in late 1996. Id.

[2] As discussed in detail below, § 256 authorizes federal judicial resolution of inventorship contests over issued patents. 35 U.S.C. § 256.

state court, defendants removed the case to this court. In their removal papers, defendants claimed removal was proper under 28 U.S.C. §§ 1338 & 1441 and, alternatively, proper under 28 U.S.C. § 1454. See Dkt. 1. Defendants claim removal was proper under § 1441 because under § 1338(a) federal district courts of the United States have original and exclusive jurisdiction "over any claim for relief arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Defendants' notice of removal argued that plaintiff's misappropriation of trade secrets theory arises under an Act of Congress relating to patents because it necessarily raises the patent issue of inventorship, which is a claim arising under federal patent law—specifically, 35 U.S.C. § 256. See Dkt. 1 ¶¶ 10-15.

Second, defendants claimed removal was proper under § 1454 based on defendants' cross-complaint seeking declaratory relief that Bierman was properly not named as an inventor of the '713 Family of Patents. Dkt. 1 ¶ 16.

The notice of removal also argues that though litigation began over three years ago, the case was timely removed because the notice of removal was filed 30 days after receipt of "other paper"—the expert reports—that put defendants on notice that the case is one that had become removable. 28 U.S.C. § 1446(b)(1), (3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . [of] other paper from which it may first be ascertained that the case is one which is or has become removable.").

On November 20, 2017, after removal, defendants timely filed a First Amended Counterclaim in this court. Dkt. 20. That counterclaim repeats the inventorship and declaratory judgment allegations, but also includes numerous allegations based on plaintiff's experts' testimony regarding "other federal patent law issues" plaintiff will allegedly argue at trial, namely claim construction, infringement, validity, and patentability. See Dkt. 20 ¶¶ 16-26.

Plaintiff filed the present motion to remand on November 27, 2017.

**DISCUSSION**

## A.    Legal Standard

A defendant may remove a civil action filed in state court if the action could have originally been filed in federal court.  28 U.S.C. § 1441.  Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  A plaintiff may seek to have a case remanded to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure.  28 U.S.C. § 1447(c).  The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction.  Id.

The removal statutes are construed restrictively, so as to limit removal jurisdiction. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).  There is a "strong presumption" against removal jurisdiction.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  This means that the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal.  Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009).  Doubts as to removability are resolved in favor of remanding the case to state court.  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

Federal courts have original and exclusive jurisdiction in "any civil action arising under any Act of Congress relating to patents."  28 U.S.C. § 1338(a).  "Under the well-pleaded complaint rule, . . . whether a claim arises under patent law must be determined from what necessarily appears in the plaintiff's statement of his own claim . . ., unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose."  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988).

A case can "arise under federal law" in two ways.  Gunn v. Minton, 568 U.S. 251, 256-58 (2013).  First, "a case arises under federal law when federal law creates the cause of action asserted."  Id. at 257.  This "creation test" "accounts for the vast bulk of suits that arise under federal law[.]"  Id. (citation omitted).  Second, even when a claim

"finds its origins in state rather than federal law," the claim nevertheless arises under federal law where it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 257-58.

Section 1454 of Title 28 provides an independent additional avenue of removal. That section allows removal of any "civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents." 28 U.S.C. § 1454. This provision was "intended to provide federal courts . . . with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws even when asserted in counterclaims, rather than in an original complaint." Vermont v. MPHJ Tech. Investments, LLC, 803 F.3d 635, 644 (Fed. Cir. 2015) (emphasis in original).

Under either removal statute, defendants removal must comply with § 1446(b)(1), which requires defendants to remove state-court actions to federal court within thirty days of receiving an initial pleading or other document that reveals a basis for removal. Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1179 (9th Cir. 2015). However, the Ninth Circuit has explained that

> Section 1446(b) is triggered upon the receipt by the defendants of a paper in the action from which removability may be ascertained. For obvious reasons, we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove. Because the focus remains on whether the case 'is or has become removable,' counsel's clairvoyant sense of what actions a plaintiff might take plays no role in the analysis. Under this approach, a defendant is not put to the impossible choice of subjecting itself to fees and sanctions by filing a premature (and baseless) notice of removal or losing its right to remove the case by waiting too long.

Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co., 844 F.3d 1133, 1142 (9th Cir. 2017) (internal citations and quotation marks omitted).

**B.     Analysis**

As explained below, the court holds that under the facts of this case the court has subject matter jurisdiction and that defendants' removal was proper under §§ 1338 &

1441 and, alternatively, under § 1454. Accordingly, the court DENIES plaintiff's motion to remand.

The court's holding is based on the specific facts and procedural history of the case, as well as the theory plaintiff intends to advance at trial. Specifically, the court understands that plaintiff intends to argue and show at trial that Bierman conceived of and disclosed to Acer engineers, pursuant to a non-disclosure agreement, many of the ideas eventually published in Acer's 1992 '713 patent application. In support, Rappaport and Zeidman will testify to that effect on direct examination. Further, Rappaport, during his deposition, testified that at trial he planned to testify that under federal patent law Bierman should have been a named inventor of the '713 Family of Patents.

Additionally, in support of plaintiff's theory, Rappaport will also testify, and Rappaport's expert report states, that the patents met federal law's definition for validity and patentability. Plaintiff intends to use that opinion as evidence that the publication of the patent disclosed, for the first time, Bierman's trade secrets.

For his part, Zeidman will opine, and his expert report already opines, that the '713 Family of Patents includes and discloses the purported trade secrets. Zeidman also will and has already opined that Acer's ACPI compliant computers use the '713 Family of Patents. Zeidman's opinion is based on his interpretation of the ACPI industry standard and his construction of the '713 Family of Patents.

Based on Zeidman's and Rappaport's testimony, Napper will testify that plaintiff is entitled to royalty-based damages for each ACPI-compliant Acer computer. A 1990 licensing agreement between plaintiff and defendants informs this calculation.

The court finds that the above theory, the only one plaintiff has advanced in its briefing and not disclaimed during the hearing, necessarily raises at least two patent issues.

First, plaintiff's argument that the patents use and disclose plaintiff's trade secrets necessarily calls into question the named inventors of the '713 Family of Patents. During the hearing on this motion and throughout the briefing, plaintiff carefully stated that on

8

direct examination plaintiff's counsel will not ask its experts to discuss whether Bierman should have been a named inventor under the federal patent laws. Similarly, plaintiff states that neither it nor Bierman seeks to be named as an inventor of the '713 Family of Patents. Indeed, if plaintiff planned to do either of the above, then there would be no question that the case belonged in federal court.

However, plaintiff's attestations alone do not remove the question of inventorship. "Conception is the touchstone of inventorship, the completion of the mental part of the invention." Burroughs Wellcome Co. v. Barr Laboratories, Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). Plaintiff's entire theory is based on the argument that the patented invention contains trade secrets conceived of by Bierman. This necessarily challenges the propriety of the '713 Family of Patents' named inventors, who Acer argues and, apparently showed in its patent application, conceived of the '713 Family of Patents. By the same token, Rappaport's opinion that Bierman created and owns the trade secrets contained in the '713 Family of Patents necessarily reaches the issue of "who invented or discovered the subject matter of the invention." 35 U.S.C. § 100(f) (defining inventor).

Further, though a defense is not sufficient to create subject matter jurisdiction, if this case remained in state court, defendants will inevitably argue that under federal law the inventors were correctly named. Plaintiff's carefully crafted declarations reveal that on cross-examination, plaintiff will ask Rappaport to opine on who should have been a named inventor under Title 35. At that point, a fully-fledged inventorship dispute would be before a state court. Defendants' § 256 counterclaim seeking a declaration on inventorship recognizes this reality.

Second, Zeidman's analysis raises federal patent law issues. Zeidman's analysis compares the purported trade secret to the '713 Family of Patents. Though plaintiff asserts otherwise, Zeidman's analysis entails construing claims within and the scope of the '713 Family of Patents. See, e.g., Ex. S. The same goes for Zeidman's comparison between the '713 Family of Patents and ACPI. See Ex. 12.

On the other hand, the court does not agree that plaintiff's theory necessarily

9

raises issues of validity and patentability.  Plaintiff intends to use Rappaport's opinion on the validity of the patents as evidence that the trade secrets were not in the public domain.  Neither validity nor patentability is the exclusive method of proving that contention.  In fact, even if the patent were invalid or the invention not patentable, plaintiff may still be able to show that the '713 patent application disclosed the trade secrets at issue.

Similarly, Napper's damages analysis, despite defendants' characterization of it as "patent-like," does not necessarily raise any patent issue.  Plaintiff's theory that it is entitled to unjust enrichment damages based on defendants' disclosure of plaintiff's trade secrets and benefit from that disclosure, does not necessarily raise any patent issues.  Plaintiff can attempt to show damages based on defendants' conduct using any theory it wishes.  That plaintiff chooses to do so using a royalty theory based on a decades old licensing agreement does not raise a patent issue.  See Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979); Ex. T ¶ 14.

This, however, does not undercut the fact that Napper's damages analysis necessarily assumes that Bierman is the sole inventor.  Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1466 (Fed. Cir. 1998) (holding that joint inventors each have rights to the entire patent).  This underscores that the inventorship issue is not just an alternate theory that plaintiff might use to show liability and damages.  Instead, it is plaintiff's only theory of its case.

Plaintiff does not convincingly argue otherwise.  Though plaintiff implies other theories might be used, plaintiff never comes close to describing a different theory of liability that does not necessarily raise at least the inventorship, infringement, and claim construction issues described above.  Plaintiff disavows only that neither plaintiff nor Bierman "seek to be declared as an inventor as that term is defined in Title 35 of the United States Code by any tribunal or by the [United States Patent and Trademark Office] on any patent."  Dkt. 21, Spielberger Decl. at ECF pp. 32-33 (emphasis added); Dkt. 28, Bierman Decl. at ECF pp. 27-28.  Plaintiff's reply does little better, stating only that on

1    direct examination plaintiff will not ask its experts to opine on who should have been

2    named as an inventor under federal patent law.  See, e.g., Dkt 28 at 3; see also Dkt. 28,

3    Spielberger Reply Decl. ¶ 4.  As discussed above, this is insufficient to side-step the

4    inventorship issues in this case.  During the hearing on this motion, the court provided

5    plaintiff numerous chances to disavow the federal patent law inventorship dispute.

6    Plaintiff declined.

7         Further, neither the briefing nor the declarations assert that plaintiff will not rely at

8    trial on Zeidman's interpretation of the trade secrets, ACPI, or the '713 Family of Patents.

9    And it appears plaintiff's theory of the case would fall apart were plaintiff to do so.

10        With the above as a backdrop, the court next determines whether it has subject

11   matter jurisdiction and whether defendants properly removed the case to this court.

12        **1.    Removal Was Proper Under Sections 1338(a) and 1441**.

13        Federal courts have original and exclusive jurisdiction in "any civil action arising

14   under any Act of Congress relating to patents."  28 U.S.C. § 1338(a).  Here, plaintiff

15   asserts only state law causes of action.  Thus, this court has jurisdiction under § 1338

16   only if defendants establish each of the elements articulated by the Supreme Court in

17   Gunn.  The case must "present[ ] a patent issue that is '(1) necessarily raised, (2) actually

18   disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting

19   the federal-state balance approved by Congress.' "  Jang v. Boston Sci. Corp., 767 F.3d

20   1334, 1336 (Fed. Cir. 2014) (quoting Gunn).

21        **a.    Patent Issues Are Necessarily Raised.**

22        If a claim "can be supported by alternative and independent theories—one of

23   which is a state law theory and one of which is a federal law theory—federal question

24   jurisdiction does not attach because federal law is not a necessary element of the

25   claim."  Rains v. Criterion Sys., Inc., 80 F.3d 339, 346 (9th Cir. 1996).  However, "the

26   court's job is not to focus on the prima facie elements of the state cause of action."  Baker

27   v. Tait, No. 3:16-CV-00236, 2017 WL 2192965, at *2 (D. Alaska May 18, 2017); see also

28   Gunn, 568 U.S. at 259 (noting the prima facie elements of a legal malpractice claim

1    under Texas law, but holding that the plaintiff's particular claim necessarily raised a

2    federal issue because the court would be required to apply federal patent law to the facts

3    of the case).  Instead, the court must determine if the claim itself, as brought in each

4    particular case "actually turn[s] on construction of [a] federal law."  El Camino Hospital v.

5    Anthem Blue Cross of Cal., No. 5:14-cv-00662, 2014 WL 4072224, at *3 (N.D. Cal. Aug.

6    14, 2014); see also Christianson, 486 U.S. at 810 ("[A] claim supported by alternative

7    theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent

8    law is essential to each of those theories.").

9           As described above, the only theory plaintiff has advanced necessarily raises at

10   least two federal patent law issues.  First, plaintiff's theory requires a showing that

11   Bierman conceived of the ideas in the '713 Family of Patents.  This boils down to an

12   inventorship dispute.  Second, Zeidman's analysis amounts to testimony about how the

13   claims within the '713 Family of Patents should be construed and whether Acer's use of

14   the ACPI standard necessarily used the '713 Family of Patents.  Claim construction is a

15   federal patent issue.  See generally Markman v. Westview Instruments, Inc., 517 U.S.

16   370, 372 (explaining that the final interpretation on a patent's scope and meaning is

17   within "the exclusive province of the court[s]").  Moreover, because Zeidman's theory

18   compares the ACPI standard to the '713 patents, rather than the trade secrets

19   themselves, it is only applicable if Bierman should have been named as an inventor or

20   coinventor on the '713 Family of Patents.

21          Plaintiff's repeated assertion that neither plaintiff nor Bierman "seek to be declared

22   as an inventor as that term is defined in Title 35 of the United States Code", see, e.g.,

23   Dkt. 21, Spielberger Decl. at ECF 32-33, amounts only to a reiteration that the complaint

24   does not assert a federal cause of action.  That does not address whether plaintiff's state

25   causes of action raise federal issues—the very point of the Gunn test.

26          Plaintiff also argues that there is no federal issue of inventorship because § 256 is

27   unavailable to plaintiff or Bierman.  Plaintiff's first iteration of this argument claims that

28   because the trade secrets were misappropriated by defendants' fraudulent conduct, there

is no remedy under § 256. That argument relies on an outdated version of § 256.

Section 256 as amended states (with deletions struck and additions underlined):

(a) Correction.--Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent ~~and such error arose without any deceptive intention on his part~~, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

(b) Patent Valid if Error Corrected.--The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. Thus, § 256 covers corrections regardless of deceptive intent allegations.

The other iterations of plaintiff's § 256 argument also fail. Contrary to plaintiff's assertion, "[n]othing in the statute governing a court's power to correct inventorship . . . prevents a court from correcting the inventorship of an unenforceable patent." Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd., 292 F.3d 1363, 1377 (Fed. Cir. 2002). The same is true for expired patents. See, e.g., Schreiber v. Eli Lilly & Co., No. 5-cv-2616, 2007 U.S. Dist. LEXIS 40884, at *16 (E.D. Penn. Mar. 19, 2007) (discussing § 256 breadth and holding that § 256 permits correction of inventorship of surrendered patents); Magnetar Techs. Corp. v. Six Flags Theme Parks Inc., No. 07-127, 2017 U.S. Dist. LEXIS 121148, at * 9-10 (D. Del. Aug. 2, 2017) ("Section 256 has no limitations period, and courts tend to read the statute broadly, erring on the side of providing relief in correcting inventorship.").

Lastly, relying on Altavion, Inc. v. Konica-Minolta Sys. Lab., Inc., 2008 WL 2020593, at *6 (N.D. Cal. May 8, 2008), plaintiff argues that though defendants' fraudulent conduct before the USPTO will be a part of the proceeding, it does not form plaintiff's exclusive theory and therefore the court does not have jurisdiction. But plaintiff has not actually articulated an alternate theory that departs from the inventorship dispute

13

described above.  Plaintiff cannot sidestep federal jurisdiction based on the mere possibility an alternative theory of liability exists but will not actually be pursued.  If that were the case, a plaintiff asserting state law causes of action could always defeat the Gunn test.

Altavion does not persuade the court otherwise.  Discussing the Supreme Court's decision in Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 811 (1988), the Altavion court found that on the face of the complaint plaintiff asserted two alternative theories to support its claim, one of which involved no patent law issues.  Altavion, Inc. v. Konica-Minolta Sys. Lab., Inc., 2008 WL 2020593, at **4-6 (N.D. Cal. May 8, 2008).  On those facts, the Altavion court remanded because an alternative theory of liability supported plaintiff's claim.  Id.

In Christianson, the Court held that "just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire [ ] claim 'arises under' patent law."  Christianson, 486 U.S. at 811.  The Court went on to explain that though the defendant pointed to one theory in the complaint that involved a substantial question of patent law, the face of the complaint also contained other theories supporting the antitrust claim that did not depend on resolving patent law issues.  Id. at 812-13.  Consequently, "the appearance on the complaint's face of an alternative, non-patent theory [compelled] the conclusion that the [antitrust] claim [did] not 'arise under' patent law."  Id. at 813.

Here, on the other hand, after over three years of litigation and on the eve of trial, plaintiff's only theory of liability necessarily involves issues that arise under patent law.  Accordingly, the court finds the first Gunn factor satisfied.

### b.  Patent Issues Are Actually Disputed.

"A federal issue is 'actually disputed' where the parties are in disagreement regarding its potential application or resolution."  Desktop Alert, Inc. v. ATHOC, Inc., No. 215CV8337, 2016 WL 1477029, at *4 (D.N.J. Feb. 24, 2016) report and recommendation adopted, No. CV158337, 2016 WL 1450551 (D.N.J. Apr. 13, 2016); see, e.g., Gunn, 568

1   U.S. at 259 (where parties disagreed on whether a particular exception to the "on-sale

2   bar" might have operated to save a patent from being declared invalid, the Court found

3   that federal law was "actually disputed").

4        Here, the parties dispute whether Bierman conceived of the ideas published in the

5   '713 Family of Patents.  That is, whether or not plaintiff seeks to alter the named

6   inventors on the '713 Family of Patents, the parties dispute whether those patents

7   correctly fail to name Bierman.  This is the central point of dispute in the case.

8        Plaintiff's argument to the contrary fails.  That plaintiff does not seek to have

9   Bierman declared as an inventor as defined under federal law does not show there is no

10  dispute.  Put another way, plaintiff will surely contest defendants' counterclaim for a

11  declaratory judgment stating Bierman should not have been a named inventor on the

12  patents.[3]  During the hearing on this motion, plaintiff's counsel confirmed that his client

13  would not stipulate to the same.

### c.    There Are Substantial Federal Issues.

15       The Federal Circuit has "held that, for the purposes of section 1338(a) jurisdiction,

16  at least four issues of federal patent law are substantial enough to satisfy the jurisdiction

17  test," including infringement and inventorship issues under 35 U.S.C. §§ 116, 256.

18  Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1330 (Fed. Cir. 1998)

19  (collecting cases), overruled on other grounds by Midwest Indus., Inc. v. Karavan

20  Trailers, Inc., 175 F.3d 1356 (Fed. Cir. 1999).  Plaintiff cites no case law contradicting this

21  binding authority.

### d.    "Federal-State Balance" Supports Removal.

23       The federal courts have a clear interest in regulating inventorship and infringement

24  issues under federal patent law.  See Hunter Douglas, 153 F.3d at 1330; Nippon

25  Telephone and Telegraph Corp., 414 F.3d 1358, 1363 (Fed. Cir. 2005); American

26

---

27  [3] Plaintiff also argues that there is no "operative cross-complaint."  Plaintiff cites no case
    law supporting the assertion that a "dispute" under Gunn requires an operative cross-
28  complaint.

Cyanamid, 196 F.3d 1366, 1372 (Fed. Cir. 1999).  Similarly, Congress' enactment of the America Invents Act (the "AIA") was "intended to provide federal courts . . . with a broader range of jurisdiction."  Vermont, 803 F.3d at 644.  The AIA "expressly removes [patent law] claims from the ambit of state court jurisdiction."  Id.

Plaintiff argues that allowing removal to stand would disrupt the federal-state balance because state courts have jurisdiction over state law claims even when the state court has to interpret federal law.  Here, however, plaintiff's theory does not only require the state court to interpret federal law but also decide the federal patent issues of inventorship, claim construction, and infringement as they relate to the '713 Family of Patents.

### e.    Conclusion: Sections 1338 & 1441

At the eve of trial, plaintiff has only advanced one theory of liability and that theory necessarily raises substantial patent law issues that are within the exclusive province of the federal courts.  Under these facts, the court finds that the four Gunn factors have been met and therefore it has subject matter jurisdiction under § 1441

### 2.    Removal Was Proper Under § 1454.

"A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed . . ."  28 U.S.C. § 1454.  This provision, added by the AIA in 2011, was "intended to provide federal courts . . . with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws even when asserted in counterclaims, rather than in an original complaint."  Vermont, 803 F.3d at 644 (emphasis in original).  The AIA "expressly removes such claims from the ambit of state court jurisdiction."  Id. (discussing changes to § 1338).

Defendants filed a cross-complaint on October 30, 2017, naming Bierman and Intellisoft.  That cross-complaint alleges that Intellisoft intends to rely on Bierman's federal inventorship claim.  Ex. 15 ¶¶ 19-20.  The cross-complaint further alleges that there is an actual controversy regarding the inventorship of the '713 Family of Patents and that, if plaintiff is successful, it is possible the patents might be invalidated under

16

§ 256 for defect in inventorship.  Id ¶ 20.  Under the Federal Declaratory Judgment Act and § 256, defendants' cross-complaint seeks a declaratory judgment that Bierman should not be a named inventor of the '713 Family of Patents.  Id. ¶¶ 15-23.

The court finds that defendants' cross-complaint satisfies § 1454's requirements.

### a.    Plaintiff's Cross-Complaint and Counterclaim Arguments Fail.

Plaintiff argues (i) that defendants admit § 1454 requires the assertion be in a pleading and (ii) that the cross-complaint was never filed.

Defendants did not admit that § 1454 requires the asserted claim be in a pleading. Defendants first correctly pointed out that § 1454's plain language only requires a party to "assert" a claim for relief relating to patents.  Whether or not defendants' cross-complaint was allowed by the court, there can be little dispute that defendants have asserted a claim involving patent law.

Defendants then, citing Masimo Corp. v. Mindray DS USA, Inc., No. 14-cv-0405, 2015 WL 93759 (D. N.J. Jan 7, 2015), recognized that one court required a pleading to satisfy § 1454.  In Masimo, defendants did not even attempt to file a cross-complaint before removing and the court held that the notice of removal's "reference to potential patent law counterclaims" did not provide jurisdiction.  Masimo, 2015 WL 93759, at **3-4 (emphasis added).  The court also refused to retain jurisdiction based on asserted federal claims made "several months" after removal.  Id. at *4.

The fact pattern here is far from similar.  Defendants have asserted a claim in a pleading—the cross-complaint—and, within the 21 day period allowed by Rule 15(a), re-asserted the same claim in an amended counterclaim.

Plaintiff next argues there is no jurisdiction under § 1454 because the cross-complaint is currently "lodged"[4] and not operative because the state court had not yet allowed defendants to file the cross-complaint.  California Code of Civil Procedure

---

[4] Plaintiff misleadingly asserts that under California Rule of Court 2.550(b) "lodged" is defined as "a record that is temporarily placed or deposited with the court, but not filed." That definition only applies to records sealed or proposed to be sealed by court order.

§ 428.50 requires a defendant who has filed an Answer to obtain leave of court before filing a cross-complaint.  In effect, plaintiff argues that in the situation at bar, removal under § 1454 is only proper if the state court allows defendants' cross-complaint to be filed and become operative.

The court has multiple concerns with this argument.  As an initial matter, contrary to plaintiff's assertion it appears that the cross-complaint was "filed" pursuant to California law.  Tregambo v. Comanche Mill & Mining Co., 57 Cal. 501 (1881) ("A paper in a case is deemed to be filed when it is delivered to the clerk for that purpose, and the clerk's fees paid if demanded.").

More importantly, plaintiff's rule would allow state courts to decide whether federal jurisdiction exists and whether a case could be properly removed to federal court.

There is no question that the court would have jurisdiction over defendants' § 256 declaratory judgment claim if it were filed in federal court as a separate action.  Under plaintiff's rule, however, the same federal court would not have jurisdiction over that same § 256 claim filed as a cross-complaint in a state court matter until the state court granted defendants leave to file the cross-complaint.

That result is illogical and contrary to decades of precedent and to § 1454.

> [A]t the outset it is to be noted that decision turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions.  The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied.  Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.

Shamrock Oil & Gas Corp., 313 U.S. at 104 (internal citations omitted).

Plaintiff's rule would run directly contrary to Shamrock.  By conditioning removal on both a state court's rules of civil procedure and a state court's decision to allow the filing of a cross-complaint, the rule would allow local law to define the scope and applicability of a federal removal statute.  Section 1454 allows removal whenever "any

18

party asserts a claim for relief arising under any act of Congress relating to patents." 28

U.S.C. § 1454. Nothing in that statute imbues the state court with the power to determine

whether a case may be removed. See also Vermont, 803 F.3d at 644 (interpreting

§ 1454 to allow removal of claims "arising under the patent laws even when asserted in

counterclaims").

In addition, though many state courts have a similar rule to California Code of Civil

Procedure § 428.50, not all states require leave of court to file a counterclaim. See, e.g.,

Illinois Code of Civil Procedure, 735 ILCS 5/2-609. Under plaintiff's proposed rule, the

very same cross-complaint might create federal jurisdiction in one state without any

action by the state court while at the same time having no effect on federal jurisdiction in

another state. Thus, the proposed rule would not only grant the states the power to

determine if and when federal jurisdiction attaches under § 1454, but also imbue only

some state courts with that power. Such a rule hardly promotes the uniform application

of § 1454.

The cases plaintiff cites do not persuade the court otherwise. McDonough v. UGL

UNICCO, 766 F. Supp. 2d 544 (E.D. Pa. 2011) (finding that plaintiff's proposed amended

complaint was not removable until plaintiff's motion to amend was granted and the

amended complaint became effective); Peaches & Cream LLC v. Robert W. Baird & Co.

Inc., No. 14-CV-6633 JG, 2015 WL 1508746 (E.D.N.Y. Mar. 31, 2015) (holding that

defenses that involve federal issues do not create jurisdiction and not actually addressing

§ 1454); Sullivan v. Conway, 157 F.3d 1092, 1094–95 (7th Cir. 1998) (addressing the

issue of whether the 30 day deadline for removal begins when plaintiff's motion to amend

the complaint is filed); Jackson v. Bluecross & Blueshield of Georgia, Inc., No. 4:08-CV-

49 (CDL), 2008 WL 4862686, at *2 (M.D. Ga. Nov. 10, 2008) (same).

This court's decision, however, does conflict with Rutgers, The State Univ. v.

BioArray Sols., Ltd., No. CV 16-4183, 2017 WL 1395486, at *6 (D.N.J. Apr. 18, 2017),

which illustrates exactly the situation this court refuses to create. In that case, though

plaintiff's complaint asserted only fraud and contract claims, during a deposition plaintiff's

counsel stated that plaintiff intended to show that the inventor of one patent should have been a named inventor of a disputed patent. Rutgers, The State Univ. v. BioArray Sols., Ltd., No. CV 16-4183, 2017 WL 1395486, at *2 (D.N.J. Apr. 18, 2017). In response to this revelation, defendant requested the state court to grant defendant leave to file a counter claim. Id. at *3. Before the state court issued an order on that request and before § 1446's 30 day deadline expired, defendant removed the case based on § 1454 and § 1338. Id. With respect to defendant's § 1454 argument, the BioArray court refused to consider the state court counterclaim because the state court had not yet granted leave for it to be filed. Id. at *7. Thus, the Bioarray court allowed the state court to decide whether the case could be removed to federal court.

Lastly, though the court finds it unnecessary to do so in light of the court's jurisdiction based on the cross-complaint, the court also finds that the weight of authority supports defendants' argument that the First Amended Counterclaim, filed in this court, independently establishes jurisdiction under § 1454. See, e.g., Sleppin v. Thinkscan.com, LLC, 55 F. Supp. 3d 366, 378 (E.D.N.Y. 2014) (holding that federal copyright claims asserted for the first time in a counterclaim could, although did not in that case, constitute a basis to deny remand); Acorne Productions, LLC v. Tjeknavorian, 33 F. Supp. 3d 175, 182 (E.D.N.Y. 2014) ("If defendants' counterclaims, which were asserted after removal, arise under the Copyright Act, this court would have jurisdiction over the counterclaims, and could exercise supplemental jurisdiction over plaintiffs' claims."); Concordia Partners, LLC v. Pick, Case No. 14-cv-09, 2014 WL 4060253, at*4 (D. Maine Aug. 14, 2014) (rejecting argument that the court could not consider the defendant's Copyright Act counterclaim because it was filed after removal reasoning that such a result would be contrary to the plain language of 28 U.S.C. § 1454 and would "unduly tend to exalt form over substance").[5]

**b.    There Is A Justiciable Basis for Declarative Relief**

---

[5] Section 1454 also covers copyright claims.

Plaintiff next argues that there is no federal jurisdiction under the Declaratory Judgment Act because the true character of defendants' action is to determine who created the trade secret technology at issue.

"The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.' " Danisco U.S. Inc. v. Novozymes A/S, 744 F.3d 1325, 1329 (Fed.Cir.2014) (quoting 28 U.S.C. § 2201(a)). "[T]o demonstrate a sufficient controversy for a declaratory judgment claim that satisfies the requirements of Article III, 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " Id. (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).

The court finds the present controversy meets that standard. Plaintiff's state court cause of action is premised on a showing that the '713 Family of Patents contain ideas that were not conceived of by the named inventors of those patents. Plaintiff does not dispute that Bierman's purported conception of the technology is central to plaintiff's misappropriation theory. Further, if plaintiff succeeds in showing Bierman conceived of the ideas, any or all of the '713 Family of Patents might be invalidated for defect in inventorship under 35 U.S.C. § 256. The court also finds the dispute sufficiently "immediate" and "real" because if remanded to state court it will likely be litigated within weeks. Plaintiff's refusal to stipulate that the '713 Family of Patents correctly lists the named inventors, confirms this holding.

Plaintiff's citation to Sleppin v. Thinkscan.com, LLC, 55 F.Supp.3d 366 (E.D. N.Y. 2014), does not persuade the court otherwise. There, defendants' counterclaim sought a declaratory judgment as to copyright ownership and infringement. Sleppin, 55 F.Supp.3d at 370. Regarding the ownership issue, the court found that the "key dispute" between the parties was whether the parties' business venture was organized as an

1    unincorporated partnership or a limited liability company. Id. at 380.  With regards to the

2    alleged infringement issue, the court determined that it actually turned on what fiduciary

3    duties, if any, defendants owed the venture.  Id.  Thus, the court determined that it did not

4    have jurisdiction under § 1454 because the declaratory judgment counterclaim did not

5    "arise under" the Copyright Act.  Id.  The opposite is true here.

6         Plaintiff's citation to Preston v. Nagel, 857 F.3d 1382 (Fed. Cir. 2017), also misses

7    the mark.  There, contrary to plaintiff's description, the court did not "appl[y] 28 U.S.C. §

8    1454 and remand[ ] the action back to state court because there was no sufficient

9    immediacy and reality to warrant the issuance of a declaratory judgment."  Dkt. 28 at

10   15:1-5.  Instead, the court held that it did not have jurisdiction to review the district court's

11   remand.  See generally Preston v. Nagel, 857 F.3d 1382 (Fed. Cir. 2017).

### c.    Conclusion: Section 1454

13        In accordance with the above, the court holds that is has jurisdiction under § 1454

14   based on defendants' state court cross-complaint and, in the alternative, defendants' First

15   Amended Counterclaim.

### 3.    Removal Was Timely Under § 1446(b)(1).

17        Section 1446(b)(1) permits defendants to remove state-court actions to federal

18   court within thirty days of receiving an initial pleading or other document that reveals a

19   basis for removal.  Jordan, 781 F.3d at 1179.  "Section 1446(b) is triggered upon the

20   receipt by the defendants of a paper in the action from which removability may be

21   ascertained."  Chan, 844 F.3d at 1142 (internal citations and quotation marks omitted).

22        Defendants argue that their receipt of the expert reports on September 28 and 29,

23   2017, was the first time removability of the case had been ascertained.  Defendants also

24   argue that expert reports constitute "other paper" under § 1446.  The court agrees.

### a.    Other Paper

26        "The type of document that constitutes an 'other paper' for the purposes of the

27   statute is broad, reflecting courts' 'embracive construction' of the term."  Rynearson v.

28   Motricity, Inc., 626 F. Supp. 2d 1093, 1097 (W.D. Wash. 2009) (quoting 14C Charles

Alan Wright & Arthur Miller, Federal Practice & Procedure § 3732 n. 26 (collecting cases)). While the Ninth Circuit has not conclusively ruled on whether expert reports or expert testimony constitute "other papers," courts and treatises have often interpreted "other papers" to include discovery related material. See 32A Am. Jur. 2d Federal Courts § 1451 (discovery documents, briefing, and deposition testimony all qualify as "other paper"); DeJohn v. AT & T Corp., No. CV 10–07107, 2011 WL 9105, at *2 (C.D.Cal. Jan. 3, 2011) ("[A]ll 'formal discovery,' including a 'deposition, interrogatory, or request for admission' meets the definition of 'other paper . . .' "). Plaintiff's expert reports fall squarely into that category. See also Gibson v. Clean Harbors Envtl. Servs., Inc., 840 F.3d 515, 522 (8th Cir. 2016) (holding an expert report constituted "other paper").

### b. Within 30 Days

The notice of removal was filed within 30 days of receiving an initial pleading or other document that reveals a basis for removal. Defendants received Rappaport's expert report on September 28, 2017. October 30, 2017 is the first non-weekend day after the 30-day deadline.

Plaintiff does not disagree. Plaintiff, however, argues that removal was untimely because in a April 28, 2017 motion in limine, defendants argued that plaintiff's damages claim should be treated as a patent claim. Plaintiff argues that defendants' window to remove the case, therefore, expired 30 days after the motion in limine filing. This argument fails.

The Ninth Circuit does not "charge defendants with notice of removability until they've received a paper that gives them enough information to remove. Because the focus remains on whether the case 'is or has become removable,' counsel's clairvoyant sense of what actions [or arguments] a plaintiff might take plays no role in the analysis." Chan, 844 F.3d at 1142 (internal citations and quotation marks omitted). That is, though defendants may have had theories or arguments that plaintiff's claim raised federal issues, those do not create a removable case. Instead, plaintiff's affirmative representations—here, plaintiff's expert discovery—trigger § 1446's 30 day deadline.

**CONCLUSION**

For all the foregoing reasons, defendants have sufficiently demonstrated removability under §§ 1338 & 1441 and separately under § 1454. Therefore, the court DENIES plaintiff's motion to remand.[6]

**IT IS SO ORDERED.**

Dated: January 22, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California

---

[6] Though neither party raised the issue, the court also has supplemental jurisdiction over the plaintiff's other causes of action because they all form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).